HOERL & ASSOCIATES, P.C., Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 91–B–1049.

United States District Court,
D. Colorado.

March 10, 1992.

Laurin D. Quiat, Quiat, Schlueter & Mahoney, P.C., Denver, Colo., John T. Kearns, Englewood, Colo., for plaintiff.

Joel J. Roessner, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., William G. Pharo, Asst. U.S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION
## AND ORDER

BABCOCK, District Judge.

Before me is plaintiff Hoerl & Associates, P.C. (Associates) December 6, 1991 motion for summary judgment on its claim for a partial refund of FICA taxes. The motion has been briefed and submitted on stipulated facts. While defendant United States has not filed a cross motion for summary judgment, it asserts, and Associates does not disagree, that this case can be decided on the stipulated facts and briefs before me.

The issue here is whether the IRS properly assessed additional FICA taxes against Associates for 1986, 1987, and 1988. Because the IRS properly assessed additional FICA taxes against Associates in relation to Richard Hoerl (Richard) for 1986 and 1988, Associates' motion is denied in part. However, because FICA taxes were improperly assessed against Associates in relation to Jean Hoerl (Jean) for 1987, Associates motion is granted in part.

Associates is a professional corporation owned equally by Drs. Richard and Jean Hoerl, husband and wife. (Stip. facts ¶¶ 1, 2, and 6.) When Associates was incorporated on May 1, 1982, Richard and Jean entered into separate employment agreements with Associates. (Joint exhibits A and B.) Under this agreement Associates agreed to pay each a salary of $120,000 for the initial two year period, and such additional compensation as Associates may determine. (Joint exs. A ¶ 4 and B ¶ 4.) Richard's and Jean's employment agreements were amended every two years, on April 20, 1984, May 1, 1986, and April 26, 1988 to adjust their bi-annual salaries. (Stip. facts ¶¶ 7—8.)

From 1986 through 1989, one spouse was compensated, while the other received little or no compensation:

| Year | Richard's compensation | Jean's compensation |
|------|------------------------|---------------------|
| 1986 | $ 5,000.00 | $120,000.00 |
| 1987 | $160,000.00 | $ 0.00 |
| 1988 | $ 0.00 | $180,000.00 |
| 1989 | $180,000.00 | $ 0.00 |

(Stip. facts ¶ 9.)

---

Associates timely paid the FICA taxes on the *actual* compensation paid to Richard and Jean from 1986 through 1988. (Stip. facts ¶ 10.) By compensating one spouse and not the other in alternating years, Associates paid FICA taxes on only one salary. Because an employee must receive at least some compensation to trigger the FICA tax, Associates effectively halved its FICA tax liability by not compensating one spouse each year.

Although Richard was compensated only $5,000 in 1986 and nothing in 1988, the IRS determined that he received the maximum wages subject to FICA taxes during these years. The IRS deemed a portion of the wages paid to him in 1987 and 1989 to have been paid to him in 1986 and 1988 for FICA tax purposes. This same reasoning was used to determine that Jean received the maximum wages subject to the FICA tax in 1987. Thus, on December 31, 1990, the IRS assessed Associates for the unpaid FICA taxes and interest on these wages. (Stip. facts ¶ 16.)

Associates immediately paid the FICA tax assessment, but also filed for a refund. (Stip. facts ¶¶ 17—18.) After the IRS de-

nied the refund, Associates instituted this action. Jurisdiction exists under 28 U.S.C. § 1346(a)(1) (1982).

Summary judgment is appropriate where there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Associates claims that it is entitled to a refund of the additional FICA taxes it paid, as a matter of law based on these undisputed, stipulated facts. The United States submits that these same undisputed facts warrant dismissal of Associates' claim as a matter of law. Neither is totally correct.

■■■ An employer's FICA tax liability attaches when wages are paid by the employer. 26 C.F.R. § 31.3111–3 (1991). Wages are paid by an employer when they are actually or constructively paid. 26 C.F.R. § 31.3121(a)–2(a). Wages are constructively paid, although not then actually reduced to possession, when they are credited to the account of or set apart for an employee so that they may be drawn upon by him at any time. 26 C.F.R. § 31.-3121(a)–2(b). To constitute payment is such case the wages must be credited to or set apart for the employee without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that they may be drawn upon at any time, and their payment brought within his own control and disposition. 26 C.F.R. § 31.3121(a)–2(b).

■■■ Under these standards, Associates has established *prima facie* that it is entitled to a refund of the additional FICA taxes assessed against it. Associates' FICA tax liability did not arise until Richard and Jean were paid. 26 C.F.R. § 31.-3121(a)–2(a). Associates paid little or no wages to Richard in 1986 and 1988. It paid no wages to Jean in 1987. Furthermore, there is no evidence indicating that wages were credited to an account or set apart for Richard or Jean during the years they were uncompensated. Thus, because little or no wages were actually or constructively paid to Richard in 1986 and 1988, Associates

argues that is not liable for the maximum FICA tax for these years in relation to his salary. Similarly, because Jean did not receive any compensation in 1987, Associates asserts that it is not liable for FICA taxes on Jean's wages for this year.

■■■ The United States, however, contends that the IRS's FICA tax assessment was proper because the bi-annual salaries were paid under a non-qualified deferred compensation plan under 26 U.S.C. § 3121(v)(2). A non-qualified deferred compensation plan is any plan or arrangement for deferral of compensation other than a plan described in 26 U.S.C. § 3121(a)(5). 26 U.S.C. § 3121(v)(2)(C). Any amount deferred under a non-qualified deferred compensation plan shall be taken into account for purposes of assessing FICA taxes when the services are performed or when there is no substantial risk of forfeiting the rights to such amount, whichever is later. 26 U.S.C. § 3121(v)(2)(A).

The parties have cited and I can find no cases or treasury regulations construing subsection 3121(v)(2). Analytically, this subsection requires me to determine, first, whether the bi-annual salaries are paid under a compensation deferral plan. If so, I next determine whether the plan is a non-qualified plan. If I conclude Richard and Jean were paid under a non-qualified compensation deferral plan then I must determine when the deferred income is deemed paid for FICA tax purposes. Richard's and Jean's bi-annual salaries will be analyzed separately.

In determining whether Richard's wages were paid under a deferred compensation plan, the language of his contract and the amendments are instructive. Richard's May 1, 1982 employment contract with Associates states that:

> For all of the services *rendered* by the Employee hereunder, the Employer agrees to pay the Employee a salary of ONE HUNDRED TWENTY THOUSAND DOLLARS ($120,000) for the initial two (2) year period of this Agreement and, in the discretion of the Employer, such additional compensation as the Em-

ployer may from time to time determine . . .

(Joint ex. A ¶ 4.) (emphasis added) This agreement was amended every two years, on April 20, 1984, April 21, 1986, and April 26, 1988 to increase Richard's bi-annual salary to $132,000, $144,000, and $180,000 respectively.

Under this contract and its amendments, Richard is entitled to his compensation when his services are *rendered.* This time is fixed at the end of the two year contract period. The use of the past tense indicates that he is to be paid at the end of two years. Moreover, the amendments describe his salary as "bi-annual", indicating that he is paid every two years. Thus, reading his contract and April 20, 1984 amendment together, Richard was entitled to his bi-annual salary of $132,000 on May 1, 1986.

Although he was entitled to $132,000 in 1986 he was paid only $5,000. He, however, was paid $160,000 in 1987. Thus, $127,000 of the $132,000 he should have been paid in 1986 was deferred until 1987. This delay in the payment of wages to Richard "for services rendered" constitutes a plan to defer compensation. Likewise, $144,000 of the $180,000 paid in 1989 was paid pursuant to a deferral plan because, under Richard's April 21, 1986 amended contract, he was entitled to his bi-annual salary of $144,000 on May 1, 1988. Richard's bi-annual salaries were paid one year after he was entitled to them and, thus, he was paid under a plan to defer compensation in 1987 and 1989. Finally, it is undisputed that Richard's bi-annual salaries were not paid under any of the qualified plans listed in 26 U.S.C. § 3121(a)(5). Consequently, he was paid under a non-qualified deferral plan. 26 U.S.C. § 3121(v)(2)(C).

■ I now determine when these deferred wages are deemed paid for FICA tax purposes. An amount deferred under a non-qualified deferred compensation plan is taken into account when the services are performed or when there is no substantial risk of forfeiting the rights to such amount, whichever is later. 26 U.S.C. § 3121(v)(2)(A).

Under Richard's April 20, 1984 amended contract, he had a two year service obligation from May 1, 1984 through May 1, 1986. His services were rendered and, thus, performed at the expiration of this period, May 1, 1986. Also, the wages payable under this contract were due on this same date. Because his wages were not payable until his services were performed, they were subject to forfeiture before this time. The risk of forfeiting these wages ended on May 1, 1986. Richard's services are deemed performed and the risk of forfeiture expired on the same day, May 1, 1986. This date, therefore, is when the $127,000 deferred until 1987 is deemed paid for FICA tax assessment purposes. *See* 26 U.S.C. § 3121(v)(2)(A).

Similarly, Richard's two year service obligation under his April 21, 1986 contract ended on May 1, 1988. Also, because his bi-annual salary was payable on this date, the risk of forfeiting these wages also ended on this date. Therefore, $144,000 of the wages he was paid in 1989 should be attributed to 1988 for FICA tax purposes. The IRS was correct when it assessed Associates for the maximum FICA tax in relation to Richard's wages in 1986 and 1988. Accordingly, Associates' motion for summary judgment on its claim for a refund in relation to Richard's compensation is denied.

There being no genuine issue of material fact remaining to resolve and the parties having agreed to resolution of this case on the stipulated facts, Associates' complaint will be dismissed as to its claim for a refund for the FICA taxes paid on Richard's salary in 1986 and 1988.

Associates may be entitled to a refund for the FICA taxes it paid in 1987 and 1989, because subsection 3121(v)(2) alters the amount of Richard's wages subject to FICA taxes during these years. Any deferred compensation which has been deemed paid in another pay period shall not thereafter be treated as wages for purposes of assessing FICA taxes. 26 U.S.C. § 3121(v)(2)(B). Therefore, the $127,000 deemed to have been paid in 1986 cannot be

taxed once in 1986 and again in 1987. Similarly, the $144,000 deemed to have been paid in 1988 cannot be taxed again in 1989. Because this claim is not now before me, I do not intimate how Associates' claim for a refund of these FICA taxes, if any, should be resolved.

Associates, however, is entitled to a refund of the FICA taxes it paid in relation to Jean's alleged compensation for 1987. Even if Jean was paid under a non-qualified deferred compensation plan, no FICA taxes were payable on her wages for 1987. Jean's May 1, 1982 employment contract contained the same language regarding compensation as Richard's contract. Also, her contract was amended every two years, on April 20, 1984, April 21, 1986, and April 26, 1988 to change her bi-annual salary to $132,000, $96,000, and $144,000 respectively. Like Richard's contract, her contract and amendments indicate that she was to be paid for services *rendered* at the end of each two year period. Like Richard, her services under her April 21, 1986 amended contract were performed by May 1, 1988. On this same date she was entitled to her bi-annual salary or such additional compensation as Associates may determine. This date was the first time, during this contract period, when her compensation was not subject to a substantial risk of forfeiture.

May 1, 1988, therefore, is when Jean's services were rendered and when her compensation was not subject to a substantial risk of forfeiture. Accordingly, her wages paid in 1988 are properly accounted for during this year for FICA tax purposes. Because no portion of this salary is accounted for in 1987, the IRS improperly assessed FICA taxes against Associates in relation to Jean for this year. Associates' motion for summary judgment will be granted in part, and Associates is entitled a refund of the FICA taxes and interest it paid in relation to Jean's salary for 1987.

Accordingly, IT IS ORDERED THAT:

(1) Associates motion for summary judgment on its claim for a refund of the FICA taxes paid in 1986 and 1987 in relation to Richard's wages IS DENIED and its complaint is dismissed as to this amount;

(2) Associates' motion for summary judgment on its claim for a refund of FICA taxes paid on Jean's wages in 1987 IS GRANTED and final judgment shall enter that the United States shall refund the FICA taxes and interest paid relating to Jean's wages for 1987; and

(3) The parties shall bear their respective costs.